JESSICA K. PRIDE (SBN 249212)
jpride@pridelawfirm.com
DANTE PRIDE (SBN 262362)
dpride@pridelawfirm.com
ALFRED VON KESSLER IV (SBN 309453)
avk@pridelawfirm.com
THE PRIDE LAW FIRM
2831 Camino Del Rio S., Suite 104
San Diego, CA 92108
Telephone: (619) 516-8166
Facsimile: (619) 785-3414
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| V.G.,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA (FEDERAL BUREAU OF PRISONS); SERGIO SAUCEDO; JEFFREY WILSON; ANDREW JONES; NICHOLAS RAMOS; and DOES 1-25, inclusive,<br><br>    Defendants. | CASE NO. 4:24-cv-04295<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br><br>1. **Sexual Abuse;**<br>2. **Gender Violence;**<br>3. **Sexual Battery;**<br>4. **Intentional Infliction of Emotional Distress;**<br>5. **Negligent Infliction of Emotional Distress;**<br>6. **Battery; and**<br>7. **Failure to Protect**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Beginning in approximately 2021, Defendant SERGIO SAUCEDO ("SAUCEDO"), a correctional officer at Federal Correctional Institution – Dublin ("FCI Dublin") owned and operated by Defendant the United States of America (Federal Bureau of Prisons) ("United States"), sexually abused Plaintiff V.G., a minimum-security inmate, in violation of federal and state law.

2.    Beginning in approximately 2021, Defendant JEFFREY WILSON ("WILSON"), a medical staff member and employee at FCI Dublin owned and operated by Defendant the United States of America, sexually assaulted Plaintiff V.G.

3.    Correctional Officer at FCI Dublin, NICHOLAS RAMOS ("RAMOS"), repeatedly subjected Plaintiff to sexual abuse.

4.    Correctional Officer at FCI Dublin, ANDREW JONES ("JONES") also repeatedly subjected Plaintiff to sexual abuse.

5.    Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to federal inmates. Under PREA, the U.S. Department of Justice promulgated detailed regulations that provide precise procedures that prisons must follow. The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

6.    Defendants SAUCEDO, WILSON, JONES, and RAMOS, medical and correctional officers at FCI Dublin, repeatedly subjected Plaintiff to sexual abuse. In doing so, Defendants violated Plaintiff's Constitutional rights and California law on gender violence, sexual assault, and common law on battery.

7.    Ray Garcia was the associate warden at FCI Dublin between December 2018 and November 2020 and the warden of FCI Dublin from November 2020 to July 2021. As the warden, Garcia was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin. Garcia was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies. Garcia created a culture of abuse that persisted past his time as warden of FCI Dublin.

8.    Garcia was also arrested and charged with sexual abuse of a ward based on his sexual abuse of multiple female inmates at FCI Dublin. He was found guilty of three counts of having sexual contact with an incarcerated person, four counts of

abusive sexual contact, and one count of lying to the FBI. Garcia was sentenced to 5 years and 10 months in prison.

9.      Garcia led training on the Prison Rape and Elimination Act and chaired the audit of FCI Dublin under the PREA. Thus, the man responsible for reporting incidents to the government and teaching inmates how to report rape was in fact a serial rapist of inmates, and he was clearly tolerating abuse by many more of his underlings, including WILSON.

10.      Garcia had actual knowledge that the other correctional officers under his supervision were sexually assaulting inmates before and after Plaintiff was abused. Despite this knowledge, Garcia did not do anything to stop it, even though he had a duty to do so. Due to the fact that Garcia had knowledge of prior sexual abuse at FCI and failed to do anything about it, it allowed FCI agents, representatives, and employees to abuse Plaintiff.

11.      Garcia had actual knowledge that inmates complained about the assaults. Garcia knew or should have known that the inmates were subjected to retaliation. Because Garcia did not investigate complaints of abuse and harassment and did not do anything to stop it, inmates, including Plaintiff, were abused. Had Garcia taken reasonable actions, which he was under a legal duty to perform, Plaintiff would not have been abused because no culture of abuse would have existed or been tolerated. Garcia's intentional indifference to inmate abuse was a substantial factor in Plaintiff suffering abuse.

12.      PREA guidelines and FCI Dublin policies and procedures required all inmate complaints of sexual assault and sexual abuse filed or reported internally be reported to Garcia. During Garcia's tenure, complaints of sexual assaults of inmates by correctional officers and/or staff were reported.

13.      With knowledge of prior abuse against inmates by FCI Dublin, representatives, and employees, Garcia failed to protect the inmates and turned a blind eye. Such behavior set the tone for rape culture at FCI Dublin, garnering Garcia

and his subordinate correctional officers and employees the nickname – "the Rape Club."

14. As a result of Defendants' actions, Plaintiff suffered numerous emotional injuries and incurred severe personal injuries, which continue to affect her today.

15. Further, UNITED STATES, WILSON, RAMOS, JONES, SAUCEDO, and others inadequately supervised and trained the prison's correctional officers and other employees which was a substantial factor in causing Plaintiff's abuse.

16. Plaintiff brings this civil action and asserts claims: (1) against WILSON and DOES 1-25, inclusive, under the Eighth Amendment's Cruel and Unusual Punishment Clause; (2) against the UNITED STATES under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 1671-2680) ("FTCA") for various tort claims against all Defendants arising under California common law committed within the course and scope of their federal office or employment.

17. For these violations, Plaintiff seeks nominal, compensatory, and punitive damages, attorneys' fees and costs, and any other relief that the Court deems appropriate.

## JURISDICTION AND VENUE

18. Plaintiff's claims arise under the United States Constitution, California statutory law, California common law, and the FTCA. The Court has diversity jurisdiction over Plaintiff's entire action under 28 U.S.C. § 1332 because Plaintiff and Defendants are diverse in citizenship and more than $75,000 is in controversy. The Court also has federal question jurisdiction over Plaintiff's Constitutional claims and FTCA claims (which have been administratively exhausted) under 28 U.S.C. § 1331. And the Court has supplemental jurisdiction over Plaintiff's California statutory and common-law claims under 28 U.S.C. § 1367 because these state-law claims arise from a common nucleus of operative fact with Plaintiff's federal question claims. The *Bivens* claims provide federal question jurisdiction as well.

19. The Court also has personal jurisdiction over Defendants. The Court has general jurisdiction over Defendants because, on information and belief, each Defendant is a citizen of, and domiciled in, California. The Court has specific jurisdiction over Defendants because they committed the actions and omissions forming the basis for each claim against them in California.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b). As noted above, Defendants' actions and omissions that give rise to Plaintiff's claims all occurred in this District, at FCI Dublin, located at 5701 8th St., Dublin, California 94568.

**INTRADISTRICT ASSIGNMENT**

21. Pursuant to Civil Local Rule 3-29(d), Plaintiff's action is properly assigned to the San Francisco Division of this District because the action arises from actions and omissions taken in Alameda County, California, where FCI Dublin is located.

**PARTIES**

22. Plaintiff is an individual and citizen of Fremont, California. During the relevant period, Plaintiff was incarcerated at FCI Dublin in Dublin, California. Plaintiff is still in FCI Dublin custody.

23. Upon information and belief, Defendant SAUCEDO is an individual and citizen of California, where he is domiciled. During the relevant period, SAUCEDO worked as correctional officer at FCI Dublin in the Bureau of Prison's (BOP's) employment. While performing the acts and omissions that Plaintiff alleges in this complaint, SAUCEDO was acting within the scope of his official employment, or with the BOP's permission and consent.

24. Upon information and belief, Defendant WILSON is an individual and citizen of California, where he is domiciled. During the relevant period, WILSON worked as correctional officer at FCI Dublin in the Bureau of Prison's (BOP's) employment. While performing the acts and omissions that Plaintiff alleges in this

THE PRIDE
LAW FIRM

complaint, WILSON was acting within the scope of his official employment, or with the BOP's permission and consent.

25. Upon information and belief, JONES is an individual and citizen of California, where he is domiciled. During the relevant period, JONES worked as a correctional officer at FCI Dublin in the Bureau of Prison's (BOP's) employment. While performing the acts and omissions that Plaintiff alleges in this complaint, JONES was acting within the scope of his official employment, or with the BOP's permission and consent.

26. Upon information and belief, RAMOS is an individual and citizen of California, where he is domiciled. During the relevant period, RAMOS worked as a correctional officer at FCI Dublin in the Bureau of Prison's (BOP's) employment. While performing the acts and omissions that Plaintiff alleges in this complaint, RAMOS was acting within the scope of his official employment, or with the BOP's permission and consent.

27. Defendant United States is a governmental entity. During the relevant period, the United States, through the BOP, a federal agency, was in possession and control of FCI Dublin, a minimum-security federal prison located in Dublin, California. The United States has waived sovereign immunity as to Plaintiff's tort claims against Defendants, pursuant to FTCA, 28 U.S.C. § 2674.

28. Plaintiff is ignorant as to the true names, identities, and capacities of Defendants DOES 1 through 25, inclusive. Therefore, Plaintiff sues these Defendants under the fictitious designation of DOES 1 through 25. Plaintiff will amend this Complaint once their identities have been ascertained as well as facts giving rise to their liability.

29. Defendants Does 1-25, individually and in their official capacities, at all times relevant herein, were correctional officers and/or employees for the BOP, acting in their official capacity. These defendants include correctional officers in supervisory positions that participated in training SAUCEDO, WILSON, JONES,

RAMOS, and other employees, in the supervision of SAUCEDO, WILSON, JONES, RAMOS, and other employees, and in reporting incidents of sexual abuse to the BOP.

## STATEMENT OF FACTS

**A.    PREA regulations provide mandatory procedures for preventing, reporting, investigating, and responding to reports of staff sexual abuse of an inmate**

30.    PREA regulations require the BOP to have a strict "written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the [BOP's] approach to preventing, detecting, and responding to such conduct," which the BOP has adopted.[1]

31.    PREA regulations also comprehensively mandate that the BOP and its correctional staff follow certain policies and procedures when an inmate has allegedly suffered sexual abuse.

32.    First and foremost, the BOP "shall require all staff to report immediately" "any knowledge, suspicion, or information regarding an incident of sexual abuse" and "staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."[2] "Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions."[3]

33.    Regardless of whether a report of sexual abuse is made, if an inmate is "subject to a substantial risk of imminent sexual abuse, [BOP employees] shall take immediate action to protect the inmate."[4]

34.    Upon receiving a report of inmate sexual abuse, the facility is required to report it to a designated internal investigator[5] and conduct an administrative or

---

[1] *See* BOP Program Statement No. 5324.11, at 15 (Jan. 6, 2014); 28 C.F.R. § 115.11(b), (c).
[2] 28 C.F.R. § 115.61(a).
[3] *Id.* § 115.61(b)
[4] *Id.* § 115.62
[5] *Id.* § 115.61(e)

criminal investigation.[6] A criminal investigation is required for all allegations of inmate sexual abuse, "unless the allegation does not involve potentially criminal behavior."[7] All such referrals must be documented.[8]

35.    Given the high risk for retaliation against a reporter or victim, the BOP is required to "protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff and shall designate which staff members or departments are charged with monitoring retaliation."[9] A prison's PREA compliance manager must monitor an inmate sexual abuse victim for 90 days after a report of abuse is filed to ensure that he or she is not retaliated against by prison staff.[10]

36.    The BOP must also provide ongoing access to mental healthcare to all inmates who have been victimized by sexual abuse while detained in the facility.[11]

37.    The BOP is required to train every employee who may have contact with inmates to comply with the above PREA regulations and must "document, through employee signature or electronic verification, that employees understand the training they have received."[12] In addition to this general training, specialized training is required for sexual abuse investigators.[13]

38.    Where an investigation finds that a staff member has engaged in sexual abuse, the presumptive disciplinary sanction is termination, and some form of discipline is required.[14]

39.    Finally, all documentation relating to an allegation of inmate sexual

---

[6] *Id.* § 115.22(a); *see also Id.* § 115.71
[7] *Id.* § 115.22(b)
[8] *Id.*
[9] *Id.* § 115.67(a).
[10] 28 C.F.R. § 115.67(c); BOP Program Statement No. 5324.11, at 44 (Jan. 6, 2014)
[11] *Id.* § 115.83(a), (b), (h).
[12] *Id.* § 115.31.
[13] *Id.* § 115.34.
[14] *Id.* § 115.76.

abuse must be maintained[15] and securely retained for at least ten years after the date of initial collection.[16]

40.    Defendants repeatedly violated these PREA regulations.

**B.    Defendant SAUCEDO and RAMOS routinely subjected Plaintiff to sexual abuse**

41.    Shortly after arriving at FCI Dublin in November 2021, Plaintiff was placed in quarantine at FCI Dublin due to the COVID-19 pandemic. During the quarantine, SAUCEDO and RAMOS commenced their sexual harassment and abuse of Plaintiff.

42.    Through his authoritative position over Plaintiff, and in violation of her civil and constitutional rights, SAUCEDO and RAMOS began sexually harassing Plaintiff. Over the next few weeks, SAUCEDO and RAMOS relentlessly harassed Plaintiff while she was trapped in her cell. During Plaintiff's bi-weekly shower time, SAUCEDO or RAMOS would open the shower curtain on Plaintiff while she was naked. Each time Plaintiff showered it was either SAUCEDO or RAMOS who sexually harassed and abused her. Plaintiff was rarely, if ever, able to shower without being sexually harassed and abused by SAUCEDO and RAMOS.

43.    SAUCEDO and RAMOS stared at Plaintiff while she was naked in the shower numerous times. SAUCEDO and RAMOS also reached their hands into the shower to "test the temperature" of the water but would stroke and rub Plaintiff's bare back. SAUCEDO and RAMOS pulled Plaintiff's long hair as they reached their hand into her shower. Plaintiff felt humiliated and scared. Each time SAUCEDO or RAMOS exposed and touched Plaintiff, it was unwelcomed, offensive, and nonconsensual.

44.    The sexual harassment and abuse by SAUCEDO and RAMOS only ended when they were walked off from FCI Dublin.

---

[15] *Id.* § 115.87(a), (d).
[16] *Id.* § 115.89(a), (d).

45. SAUCEDO and RAMOS' conduct is an example of some of the cruel and unusual punishment that Plaintiff endured at FCI Dublin.

**C. Jones routinely subjected Plaintiff to sexual abuse**

46. Throughout Plaintiff's quarantine, JONES joined both SAUCEDO and RAMOS in the shower sexual harassment and abuse.

47. JONES also opened the curtain on Plaintiff's showers and reached his hand into the shower to "test the temperature" of the water. On multiple occasions, when JONES reached his hand into Plaintiff's shower, he stroked her back and dragged his hand down her back to her buttocks. JONES groped Plaintiff's buttocks while she showered.

48. JONES, SAUCEDO, and RAMOS called Plaintiff "exotic" stating that as the reason they were sexually harassing and sexually abusing her.

49. Throughout quarantine, Plaintiff and the other inmates' meals were brought to them. Plaintiff is a vegetarian and she was often only brought meals that contained meat. At times, JONES brought Plaintiff into the kitchen alone offering her food within her dietary restrictions. In the kitchen, JONES would make Plaintiff undress for food. If she did not comply with his requests to undress, he would withhold food from her causing her to starve. JONES also limited the food that was brought to Plaintiff to only peanut butter.

50. When JONES delivered food to Plaintiff's cell he would make lewd comments to her. JONES told Plaintiff she had a "sexy butt." JONES tried to squeeze Plaintiff's buttocks.

51. JONES also made Plaintiff undress at times when he brought food to her. JONES told Plaintiff that if she did not strip for him, he would not give her food. At least one time, JONES asked Plaintiff if she knew how to "belly dance" and demanded she shake her hips for him. When Plaintiff undressed, JONES would touch her body and hair. At least one time, JONES tried to insert his fingers inside Plaintiff's anus, but was unable to penetrate her.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

52. One time, when JONES came to Plaintiff's cell, JONES demanded Plaintiff undress and he began touching her body. JONES touched Plaintiff's chest and back, squeezing her buttocks. JONES made repeated comments to Plaintiff about how she looked "exotic." JONES asked Plaintiff where she was from. Plaintiff tried to push JONES away from her, but he forcefully held onto her. JONES then demanded Plaintiff lay on her stomach, face down, on top of her bed. JONES penetrated Plaintiff with his penis. As JONES penetrated Plaintiff, a sound came from his radio. JONES was being called to by someone else. JONES stopped sexually assaulting Plaintiff, stood up, laughed, and left Plaintiff's cell. Plaintiff did not have a cellmate at this time and there were no cameras in the hallway.

53. Plaintiff was afraid to report the abuse of JONES, SAUCEDO, and RAMOS as she heard that when reports were made the person who reported was retaliated against by being sent to the Special Housing Unit ("SHU") for six months to a year.

54. JONES's conduct is an example of some of the cruel and unusual punishment that Plaintiff endured at FCI Dublin.

55. JONES was indicted on six (6) counts of sexual abuse of a ward and one count of making a false statement to a government agency. JONES pleaded guilty to 6 counts of sexual abuse.

56. JONES was sentenced to eight years in prison.

**D.   Defendant WILSON routinely subjected Plaintiff to sexual abuse**

57. Plaintiff was experiencing intense abdomen pain and went to the health center for a checkup. Plaintiff informed WILSON of the pain she was experiencing. WILSON pushed Plaintiff and touched her abdomen. WILSON then tried to move down to her pelvic region, touching her bare skin. Plaintiff felt WILSON'S finger at her vaginal opening.

58. WILSON told Plaintiff she needed a shot to help her sleep and resolve the pain. Plaintiff was uncomfortable with WILSON and declined the shot. WILSON

continued to insist the shot would resolve her pain. Plaintiff continued to refuse. Instead, WILSON gave Plaintiff some pills to help her sleep.

59.    When Plaintiff woke up the next day, she felt exhausted and tired. Plaintiff's body was hurting and she did not remember anything from before going to sleep. Plaintiff's vagina was sore and she felt as though something had been inserted into her vagina; similar to how it would feel after sexual intercourse occurred. Plaintiff noticed she was bleeding through her clothes, and she had intense cramping which was unlike anything she felt from menstruation.

60.    WILSON was the last person Plaintiff had seen.

61.    Plaintiff was terrified of the idea that he was going to take revenge since he looked like a very aggressive person.

**E. FCI Dublin is known for its culture of tolerating sexual misconduct**

62.    Based on information and belief, throughout the last three decades, the United States has repeatedly ignored incidents of sexual misconduct at FCI Dublin. Currently, six employees have been indicted by the Department of Justice for sexual misconduct, five have pled guilty or been convicted, and nine other employees are on administrative leave pending investigation – the most in U.S. history of the Bureau of Prisons. Twenty-five total were under investigation as of May 2022.[17] The following examples are just a fraction of the magnitude of sexual misconduct and violence that transpired at FCI Dublin:

- In 1996, BOP officers took three female inmates from FCI Dublin to a male unit, opened their cell doors, and allowed male inmates to rape them.

- In the late 1990's and early 2000's, four male BOP employees were either convicted or pled guilty to sexually abusing female inmates at FCI Dublin.

---

[17] See Lisa Fernandez, 25 Dublin prison employees under investigation for sex, drug, lying abuses, KTVU (May 5, 2022), https://www.ktvu.com/news/25-dublin-prison-employees-under-investigation-for-sex-drug-lying-abuses.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

- According to the U.S. Senate Report, [18] in the early 2010's, approximately a dozen Dublin employees were removed for their sexual abuse of inmates, "including one who videotaped himself having sex with inmates and stored those tapes in a prison locker. None were arrested."

- In 2019, an FCI inmate, Victoria Peterson, filed a suit against Officer William Martinez for abusing his power and using excessive force to have sex with her. She also sued the warden at the time, Wiley Jenkins, for failing to take disciplinary action against Martinez and allowing him to continue working at FCI Dublin.

- In 2019, inmate L.I. filed a claim against former FCI Dublin chaplain James Highhouse for sexual assault. Highhouse started having unwanted physical contact with L.I. in May of 2018, and although he was ultimately charged with abuse of L.I., prosecutors said he engaged in predatory conduct with at least six women from 2014 to 2019. Highhouse pleaded guilty and was sentenced to seven years in prison.

- Between approximately June of 2020 and September of 2020, inmate A.R. witnessed Klinger's sexual relationship with another inmate. She witnessed Klinger take women into a hidden areas to have sex with him. Klinger and CO Jaime Perez spoke with sexually explicit language toward A.R. CO Perez would bump up against her and grab her breasts. Officer Perez also took photos of A.R.

- Between approximately August 2020 and November 2020, inmate D.V. was pressured into an ongoing sexual relationship with FCI Dublin Correctional Officer Enrique Chavez. CO Chavez kissed her, touched

---

[18] Jon Ossoff & Ron Johnson, S. Rep., Sexual Abuse of Female Inmates in Federal Prisons (2022) (released in conjunction with the permanent subcomm. on investigations December 13, 2022 hearing).

- 13 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

The Pride Law Firm

her bare breasts and vagina, and had D.V. touch his penis. CO Chavez was known to bring inmates into the kitchen closet for "meetings."

- In 2021, CO Chavez sexually harassed another inmate, J.C., while was working in the kitchen. CO Chavez would brush his erect penis up against J.C. and said "look, it's hard for you." CO Chavez was charged with abusive sexual contact of a prisoner in violation of 18 U.S.C. § 2244(a)(4). He pled guilty to the conduct and was sentenced to 20 months in prison.

- Another inmate, A.J., suffered sexual abuse at FCI Dublin between approximately September 2021 and May of 2022. When A.J. arrived, Paramedic Fraser Cohen grabbed her breasts with no chaperone. Later throughout her incarceration, CO Nicholas Ramos consistently watched her in the shower, and both CO Ramos and CO Phillips made her strip, cough, and squat for cavity searches.

- From April through October 2020, Klinger manipulated inmate M.R. into performing oral sex and engaging in forced sexual intercourse.

- Saucedo watched inmate A.J. in the shower on multiple occasions. Saucedo ripped open the shower curtain while inmate L.C. was showering, causing her to fall over so he could see her naked body. Saucedo also sexually harassed L.C. by making sexual noises at her and squirting shampoo on her clothing, mimicking ejaculation. Additionally, inmate L.A. was sexually harassed by Saucedo when he forced her to bend over in front of him.

- Inmate D.S. was forced to engage in oral sex with nurse Jeff Wilson. Jeff Wilson also forced inmate L.A. to show him her breasts.

- Another inmate went to TDY (temporary duty) medical employee Jay Alexander (exact name unknown) for medical treatment on her back,

and he pulled her underwear down and touched her buttocks and in between her inner thighs.

- Inmate G.M. was preyed upon by Disciplinary Hearing Officer (DHO) David Perez for over three years. David Perez would "make out" with G.M., touch her breasts, caress her, and make her believe he was her boyfriend. When G.M. was on probation, David Perez met up with her and had her touch his genitals.

- Another kitchen foreman, O'Connor (full name unknown) touched inmate N.P.'s buttocks and brushed his hand over her chest.

- CO Jones would tell inmate J.C. to "suck his dick" and he would tell her to "Get on your knees." CO Jones would grab his genitalia and tell her to "look."

63.    Upon information and belief, at least 25 FCI Dublin employees, including those who courageously reported and/or acted to prevent instances of sexual violence, have been reassigned to other prisons. This reassignment got the attention of Congresswoman Jackie Speier, who wrote a letter to the new Director of the Federal Bureau of Prisons, Colette Peters, requesting information about FCI Dublin's "culture of rampant sexual misconduct and subsequent cover-ups."[19]

64.    In the Federal Bureau of Prison Annual PREA report for calendar year 2021, BOP director Michael Carvajal wrote this summary of staff on inmate sexual misconduct for BOP facilities:

VI. Staff-on-Inmate Incident-Based Assessment: Data for this category is provided in aggregate form in the below table. Staff incidents are received, assessed, and processed by the Office of Internal Affairs. Thus, facility security level is not noted, and only the year-end totals are provided in this report. During CY2021, there were no substantiated cases in this category.

---

[19] KTVU Fox 2 Reporter Lisa Fernandez: https://www.ktvu.com/news/dublin-prison-guard-says-she-was-forced-out-for-reporting-abuse

Please note that investigative cases must be closed prior to inclusion in this report. This report encompasses cases that were closed by March 31, 2022.

| Facility | Number of Allegations | Number of Substantiated Cases | Ongoing Investigative Cases |
|---|---|---|---|
| BOP | 315 | 0 (0%) | 237 |
| Residential | 25 | 0 (0%) | 12 |

65. Thus, according to Carvajal, for the calendar year 2021 data collection period which encompassed 106 BOP facilities, there were zero substantiated cases of staff on inmate sexual abuse.

66. Every three years, BOP is required to audit each facility to determine compliance with PREA standards. 28 C.F.R. 115.401(a).

67. A PREA Audit Report for FCI Dublin was completed and signed on June 14, 2017.

68. That report found that FCI Dublin met or exceeded PREA standard.

69. The next final PREA audit report was March 12, 2022.

70. The 2022 audit report claimed that FCI Dublin was fully compliant with all 45 PREA standards.

71. The audit was completed after Ray Garcia had been "walked out" of FCI Dublin for his repeated sexual abuse of inmates.

72. In December 2022, the United States Senate reported on the Permanent Subcommittee on Investigations findings from its investigation into sexual abuse of female prisoners in custody of the BOP. The report found that in at least four BOP facilities (FCI Dublin being one of them), multiple women endured ongoing sexual abuse for months or years. The report's conclusion stated, "BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees. The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities to go undetected. BOP's internal affairs practices have failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as

- 16 -

a result. Further, for a decade, BOP failed to respond to this abuse or implement agency-wide reforms. Moving forward, BOP should consider the Subcommittee's findings as it works to implement changes to how it handles sexual abuse of female prisoners by male BOP employees."[20]

73.    Defendant GARCIA was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact and one count of lying to the FBI. GARCIA was sentenced to 5 years and 10 months in prison. Former CO Ross Klinger pled guilty to federal criminal charges for Sexual Abuse of a Ward (18 U.S.C. § 2243(b)) stemming out of his conduct against two other inmates and he is awaiting sentencing scheduled for December 13, 2023. A federal jury convicted CO John Bellhouse of five counts of sexually abusing female inmates. Additionally, in March of 2022, SAUCEDO and CO Nicholas Ramos were placed on leave as a result of sexual misconduct allegations. CO Ramos committed suicide on August 21, 2022.

74.    Defendant United States failed to provide the sexual abuse victims with counseling services or victim advocates. The victims were retaliated against with interviews and examinations after filing their Federal Tort Claims. As a result of reporting the misconduct, the victims were put in the Solitary Housing Unit (SHU), received daily room tosses, and were placed on lock downs. The victims also had their phone calls and visitations taken away, their legal mail was read, and their legal phone calls were monitored.

75.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was the agent, servant, and employee of the remaining Defendants, and at all times herein mentioned, each was acting within the time, place and scope of employment of other Defendants. At all material times, all of the Defendants aided, abetted, authorized, and ratified all of the actions of all

---

[20] JON OSSOF & RON JOHNSON, S.REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the Permanent Subcomm. on Investigations December 13, 2022, hearing).

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

of the other Defendants. Plaintiff is informed and believes, and based thereupon alleges, that at all material times, Defendants, and each of them, were the agents, employees, managing agents, supervisors, coconspirators, parent corporation, joint employers, alter ego, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendants. Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly, and severally.

**FEDERAL TORT CLAIMS ACT ADMINISTRATIVE EXHAUSTION**

76.    Plaintiff has exhausted these claims against the United States under the FTCA.

77.    Plaintiff submitted a "Claim for Damage Injury, or Death" to the BOP for "permanent injuries, mental anguish, embarrassment, humiliation, pain, distress, and damages" as a PREA victim involving staff at FCI Dublin in the sum of $5,000,000.00.

78.    The BOP received her administrative claim on February 9, 2024.

79.    On July 15, 2024, Plaintiff received a rejection from the BOP. Pursuant to 28 U.S.C. § 2675(a), Plaintiff brings this claim.

## CLAIMS FOR RELIEF

## CLAIM ONE

## EIGHTH AMENDMENT, CRUEL AND UNUSUAL PUNISHMENT – SEXUAL ABUSE

## (Against WILSON, JONES, RAMOS, SAUCEDO and DOES 1-25, inclusive)

80. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

81. Plaintiff brings this claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution against WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive.

82. At all material times, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, were federal employees of the BOP at FCI Dublin, acting under the color of federal authority with respect to the allegations in this complaint.

83. WILSON, JONES, RAMOS, and SAUCEDO violated Plaintiff's right to be free from cruel and unusual punishment by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

84. WILSON, JONES, RAMOS, and SAUCEDO's sexual abuse of Plaintiff occurred under coercive circumstances.

85. By intentionally subjecting Plaintiff to sexual acts, WILSON, JONES, RAMOS, SAUCEDO acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

86. The inhumane conditions of confinement caused by WILSON, JONES, RAMOS, SAUCEDO's repeated sexual abuse caused Plaintiff severe physical, mental, and emotional harm.

87. WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

88.    Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

89.    Plaintiff makes these allegations against DOES 1-25, inclusive.

## CLAIM TWO

### GENDER VIOLENCE (Cal. Civ. Code § 52.4)

### (Against WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive)

90.    Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

91.    Plaintiff brings this claim for gender violence under California Civil Code § 52.4 against WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25.

92.    Under California statute, any person subjected to gender violence may bring a civil action for damages against the responsible party. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

93.    WILSON, JONES, RAMOS, SAUCEDO discriminated against Plaintiff based on her female gender when they repeatedly sexually abused her, by physically subjecting her to sexual acts, under the coercive conditions that were present between them.

94.    WILSON, JONES, RAMOS, SAUCEDO's actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

95. By repeatedly subjecting Plaintiff to sexual acts, WILSON, JONES, RAMOS, SAUCEDO caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

96. WILSON, JONES, RAMOS, SAUCEDO acted with malice and oppression and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

97. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

98. These allegations are asserted against DOES 1-25, inclusive.

99. Plaintiff also seeks attorneys' fees and costs, as expressly authorized by statute.

## CLAIM THREE

### SEXUAL BATTERY (FTCA, Civ. Code § 1708.5)

### (Against UNITED STATES, WILSON, JONES, and DOES 1-25, inclusive)

100. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

101. Plaintiff brings this claim for sexual assault under FTCA and California Civil Code § 1708.5 against UNITED STATES WILSON and JONES. The UNITED STATES ratified the conduct of WILSON and JONES.

102. WILSON and JONES violated Plaintiff's statutory right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

103. WILSON and JONES' sexual abuse of Plaintiff occurred under coercive circumstances.

104. For these reasons, WILSON and JONES' sexual abuse of Plaintiff, an inmate in the custody of their employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

105. Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts, WILSON and JONES must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

106. Plaintiff did not and could not consent to the touching.

107. By intentionally subjecting Plaintiff to sexual acts, WILSON and JONES acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

108. WILSON and JONES' actions and judgment in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

109. By repeatedly subjecting Plaintiff to sexual acts, WILSON and JONES caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

110. WILSON and JONES acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

111. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (against individuals only).

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

112.   All these allegations are asserted against DOES 1-25, inclusive.

## CLAIM FOUR

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (FTCA, California common law)

### (Against UNITED STATES, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive)

113.   Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

114.   Plaintiff brings this claim for intentional infliction of emotional distress under FTCA / California common law against UNITED STATES, WILSON, JONES, RAMOS, and SAUCEDO. The UNITED STATES ratified the conduct of WILSON, JONES, RAMOS, and SAUCEDO.

115.   WILSON, JONES, RAMOS, and SAUCEDO engaged in outrageous conduct by repeatedly subjecting Plaintiff to sexual acts and harassment while she was incarcerated as an inmate in his employer's custody. WILSON, JONES, RAMOS, and SAUCEDO abused their authority over Plaintiff and their power to affect her interests in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

116.   Plaintiff did not and could not consent to the touching.

117.   WILSON, JONES, RAMOS, and SAUCEDO's sexual abuse caused Plaintiff to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

118.   WILSON, JONES, RAMOS, SAUCEDO intended to cause Plaintiff this emotional distress because he knew that emotional distress was certain to result from their sexual abuse of an inmate.

119.   WILSON, JONES, RAMOS, and SAUCEDO' actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial

THE PRIDE
LAW FIRM

conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

120. WILSON, JONES, RAMOS, and SAUCEDO acted with malice and oppression, entitling Plaintiff to punitive damages.

121. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (against individuals only).

122. These allegations are asserted against DOES 1-25, inclusive.

## CLAIM FIVE

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (FTCA, California common law)

### (Against UNITED STATES, JONES, WILSON, RAMOS, SAUCEDO and DOES 1-25, inclusive)

123. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

124. Plaintiff brings this claim against the UNITED STATES, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, under the FTCA and California common law based on the actions and/or omissions of UNITED STATES, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, which were taken while working at FCI Dublin in his capacity as an employee of the BOP and acting within the scope of his employment, with UNITED STATES' permission and consent.

125. At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the UNITED STATES in possession and control of FCI Dublin.

126. **Duty**. UNITED STATES, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, had a special, heightened, custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse. PREA regulations and BOP policy prohibiting sexual abuse confirm this special and heightened duty.

127. **Breach of duty – inadequate supervision**. The UNITED STATES, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, failed to supervise and operate FCI Dublin in a manner that would have prevented WILSON, JONES, RAMOS, SAUCEDO'S ongoing sexual abuse of Plaintiff.

128. The United States and GARCIA did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

129. WILSON, JONES, RAMOS, and SAUCEDO's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States and GARCIA.

130. **Injuries and relief sought**. UNITED STATES, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, actions and omissions caused Plaintiff to suffer, and continue to suffer, serious and severe emotional distress, including fear, depression, and anxiety, because of being repeatedly sexually abused.

131. Plaintiff's emotional reaction was not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the emotional distress caused by being sexually abused by a correctional officer, who had a duty to protect her from such abuse. Plaintiff's distress was of such a substantial and enduring quality that no reasonable person in a civilized society should be expected to endure it.

132. By reason of the UNITED STATES, WILSON, JONES, RAMOS, and SAUCEDO's, negligent infliction of emotional distress Plaintiff has suffered severe emotional distress and will continue to suffer severe mental and emotional anxiety and distress.

133. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

134. These allegations are asserted against DOES 1-25, inclusive.

## CLAIM SIX

### BATTERY (FTCA, California common law)

### (Against UNITED STATES, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive)

135. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

136. Plaintiff brings this claim for battery under FTCA and California common law against UNITED STATES, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive. The UNITED STATES ratified the conduct of WILSON, JONES, RAMOS, and SAUCEDO.

137. WILSON, JONES, RAMOS, and SAUCEDO committed battery against Plaintiff by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

138. WILSON, JONES, RAMOS, and SAUCEDO'S sexual abuse of Plaintiff occurred under coercive circumstances.

139. For these reasons WILSON, JONES, RAMOS, and SAUCEDO'S sexual abuse of Plaintiff, an inmate in the custody of their employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and

THE PRIDE LAW FIRM

was unwarranted by the social usages in prison when the contact was made.

140. Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts WILSON, JONES, RAMOS, and SAUCEDO must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

141. By intentionally subjecting Plaintiff to sexual acts WILSON, JONES, RAMOS, and SAUCEDO acted maliciously in a manner that is deeply offensive to human dignity and void of any penological justification.

142. WILSON, JONES, RAMOS, and SAUCEDO'S actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

143. By repeatedly subjecting Plaintiff to sexual acts, WILSON, JONES, RAMOS, and SAUCEDO caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

144. WILSON, JONES, RAMOS, and SAUCEDO acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

145. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (only against individuals).

146. These allegations are asserted against DOES 1-25, inclusive.

## CLAIM SEVEN

## EIGHTH AMENDMENT, DELIBERATE INDIFFERENCE – FAILURE TO PROTECT

**(Against WILSON, RAMOS, JONES, SAUCEDO and DOES 1-25, inclusive)**

147. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

148. Plaintiff brings this claim against WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

149. At all material times, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, were federal employees, acting under the color of federal authority with respect to the allegations set forth above.

150. WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, deprived Plaintiff of her right to be free from cruel and unusual punishment by failing to protect her from a substantial risk of serious harm from sexual abuse and sexual harassment by WILSON, JONES, RAMOS, SAUCEDO, by acting in conscious disregard of that known risk.

151. WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, failed to take immediate action to protect Plaintiff, including by separating her from WILSON, JONES, RAMOS, SAUCEDO, in violation of 28 C.F.R. § 115.62.

152. WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable officer in the circumstances would have appreciated the obviously high degree of risk involved.

153. WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, therefore acted with deliberate indifference to substantial risk of sexual abuse in violation of the Eighth Amendment, subjected Plaintiff to dangerous and debasing conditions of confinement, including sexual abuse, and violated her fundamental

rights to safe and humane confinement. This cruel and unusual punishment caused Plaintiff physical, mental, emotional, and constitutional injuries.

154. WILSON, JONES, RAMOS, and SAUCEDO purposefully denied Plaintiff protection from the known and substantial risk of serious harm of sexual abuse.

155. WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25's, inclusive, deliberate indifference was malicious, oppressive, reckless, and callous, entitling Plaintiff to punitive damages.

156. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## **CLAIM EIGHT**

### **NEGLIGENCE (FTCA, California common law)**

### **(Against the UNITED STATES, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive)**

157. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

158. Plaintiff brings this claim against the UNITED STATES, CHAVEZ, JONES, and DOES 1-25, inclusive, under the FTCA and California common law based on the actions and/or omissions of UNITED STATES, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, taken while working at FCI Dublin in their capacities as employees of the BOP and acting within the scope of their employment, with the permission and consent of the United States.

159. At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

160. **Duty**. UNITED STATES, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

161. The BOP's Personal Conduct rules for staff disallow any sexual activity with an inmate, and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

162. Alternatively, UNITED STATES, WILSON, JONES, RAMOS, SAUCEDO, and DOES 1-25, inclusive, had a general duty of care to Plaintiff.

163. WILSON, JONES, RAMOS, and SAUCEDO's sexual abuse of Plaintiff was reasonably foreseeable to the United States because WILSON, JONES, RAMOS, and SAUCEDO'S conduct made it obvious they were sexually abusing Plaintiff.

164. **Breach of duty – inadequate supervision**. UNITED STATES, WILSON, JONES, RAMOS, SAUCEDO failed to supervise and operate FCI Dublin in a manner that would have prevented WILSON, JONES, RAMOS, and SAUCEDO'S ongoing sexual abuse of Plaintiff.

165. The UNITED STATES did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

166. WILSON, JONES, RAMOS, and SAUCEDO's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States.

167. **Injuries and relief sought**. Plaintiff suffered a physical violation, a violation of her liberty interest in being free from sexual abuse, injury from being denied freedom of movement and programming, and severe mental and emotional anxiety and distress, and will continue to suffer severe mental and emotional anxiety and distress in the future.

168. Plaintiff seeks the following relief for her injuries: non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1. Nominal damages in an amount to be determined at trial;

2. Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

3. Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights (except against United States);

4. An award to Plaintiff of reasonable costs; and

5. An award to Plaintiff of reasonable attorneys' fees pursuant to 28 U.S.C. § 2678 and Cal. Civ. Code § 52.4; and

6. Such other and further relief as the Court may deem fit and proper.

Dated: July 17, 2024                    **THE PRIDE LAW FIRM**

                                        /s/ Jessica K. Pride
                                        Jessica K. Pride
                                        Email: jpride@pridelawfirm.com
                                        Attorneys for Plaintiff